# 24-2328-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

JOSEPH EUGENE LEMAY, AKA Gene Lemay,

*Defendant,*

JOEL LINGAT, AKA Sealed Defendant 1,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANT-APPELLANT

JAMES J. MAHON, ESQ.
SAMANTHA A. LESSER, ESQ.
BECKER NEW YORK, P.C.
*Attorneys for Defendant-Appellant*
45 Broadway, 17th Floor
New York, New York 10006
(212) 599-3322

CP COUNSEL PRESS (800) 4-APPEAL • (334607)

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ............................................................... 1

STATEMENT OF THE CASE ............................................................................... 2

JURISDICTIONAL STATEMENT ........................................................................ 5

SUMMARY OF ARGUMENT ............................................................................... 5

LEGAL ARGUMENT ............................................................................................ 7

WHETHER THE KLEIN CONSPIRACY DOCTRINE IS STILL VIABLE WHEN USED TO PROSECUTE THE OBSTRUCTION OF THE ADMINISTRATION OF THE TAX LAWS ........................................................ 7

   i. The Supreme Court Limits The Overly Broad Interpretation Of General Criminal Statutes ........................................................................................... 7

   ii. The Government charged Mr. Lingat under a general criminal statute even though the Internal Revenue Code has a specific statutory scheme designed to deal with Joel Lingat's alleged criminal conduct ........................................................ 11

   iii. Whether evidence introduced by the Government, that the conspiracy began decades before the conduct alleged in the indictment took place, constitutes reversible error .............................................................................................. 16

   iv. Whether the court below properly permitted the Government to introduce a

statement by an alleged co-conspirator under the hearsay exception to the Federal

Rules of Evidence ................................................................................................ 17

**CONCLUSION** ............................................................................................... **20**

**CERTIFICATE OF COMPLIANCE** .................................................. **21**

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                           **Page(s)**

In re Arway,
  22 B.R. 216 (W.D.N.Y. 1998) ............................................................10

Bourjaily v. United States,
  483 U.S. 171 (1987) ........................................................................17

Ciminelli v. United States,
  598 U.S. 306 (2023) ..........................................................................9

Cleveland v. United States,
  531 U.S. 12 (2000) ............................................................................9

Finkel v. Stratten Corp.,
  962 F.2d. 169 (1992) ........................................................................10

Fischer v. United States,
  No. 23-5572, 603 U.S. __ (2024) ........................................................9

Glenn v. Bartlett,
  98 F.3d 721 (2d Cir. 1996) ..............................................................18

Haas v. Henkel,
  216 U.S. 462 (1910) ..........................................................................8

Hammerschmidt v. United States,
  265 U.S. 182 (1924) ..........................................................................8

Kelly v. United States,
  140 S. Ct. 1565 (2020) ......................................................................9

Loper Bright Enters. v. Raimondo,
  144 S. Ct. 2244 (2024) ................................................................10, 11

Marinello v. United States,
  138 S. Ct. 1101 (2018) ....................................................................15

McDonnell v. United States,
  136 S. Ct. 2355 (2016) ......................................................................9

Nutritional Health Alliance v. Food and Drug Administration,
    318 F.3d 92 .........................................................................12

People v. Valenza,
    60 N. Y. 2nd 363 (1983) ....................................................12

Percoco v. United States,
    598 U.S. 319 (2023).............................................................9

Rogers v. Tennessee,
    532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (Scalia, J.,
    dissenting) ............................................................................6

Shi Liang Lin v. U.S. Dept. of Justice,
    494 F.3d. 296 (2d Cir. 2007) ............................................10

Skilling v. United States,
    561 U.S. 358 (2010).............................................................8

State v. Shriner,
    101 Wash. 2d 576 .............................................................12

Trump v. United States,
    No. 23-929, 603 U.S. __ (2024) ........................................9

U.S. v. Garcia,
    793 F.3d 1194, 97 Fed. R......................................................19

U.S. v. Jackson,
    636 F.3d 687 (5th Cir. 2011) ............................................19

United States v. Adelekan,
    567 F.Supp.3d 459 (S.D.N.Y. 2021) ................................17

United States v. Atilla,
    966 F.3d 118 (2d Cir. 2020) ............................................15

United States v. Beech-Nut Nutrition Corp.,
    871 F.2d 1181 (2d Cir. 1989) ..........................................18

United States v. Coplan,
    703 F.3d 46 (2d Cir. 2012) ...............................6, 8, 9, 11

v

United States v. Desena,
  260 F.3d 150 (2d Cir. 2001) ...................................................................18

United States v. Esparra,
  2014 WL 1569607 (S.D.N.Y. 2014) ......................................................18

United States v. Gigante,
  166 F.3d 75 (2d Cir. 1999) .....................................................................17

United States v. Hermann,
  705 F.2d. 662 (2d Cir. 1982) ..................................................................16

United States v. Hirsch,
  100 U.S. 33 (1879) ...................................................................................8

United States v. Johnson,
  56 F.3d. 347(2d Cir. 1995) .....................................................................16

United States v. Juarez,
  866 F.2d. 622 (5th Cir. 2017) .................................................................16

United States v. Klein,
  247 F.2d 908 (2d Cir. 1957) ...........................................................7, 8, 11

United States v. Lanier,
  520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) ........................6

United States. v. Moldonado-Rivera,
  922 F.2d 934 (2d Cir. 1990) ...................................................................18

United States v. Padilla,
  203 F.3d 156 (2d Cir. 2000) ...................................................................18

United States v. Sakos,
  115 F. Supp 3d. 475(D. Conn 2015).......................................................16

United States v. Santos,
  20 F.3d 280 (7th Cir. 1994) ....................................................................18

United States v. Varoudakis,
  233 F.3d. 113 (1st Cir. 2000)..................................................................16

**Statutes**

18 U.S.C. § 371 ........................................................................*passim*

18 U.S.C. § 3231 ....................................................................5

26 U.S.C. § 3601(1939) ........................................................14

26 U.S.C. § 7212 ......................................................1, 13, 14, 15

26 U.S.C. § 7214 ..............................................................1, 13

28 U.S.C. § 1291 ....................................................................5

**Other Authorities**

Abraham S. Goldstein, *Conspiracy to Defraud the United States*, 68
    Yale L.J. 405 (1959) ......................................................5

Federal Rules of Evidence Rule 801(d)(2)(E) ....................................1,17

Jermey H. Temkin, *Is the 'Klein' Conspiracy Doomed?*, NYLJ,
    November 23, 2023 ........................................................6, 12

John A. Townsend, *Tax Obstruction: Is Making the IRS's Job Harder
    Enough,* 9 Hous. Bus. & Tax L.J. 255 (2009) ....................................5

Melville, Bartelby the Scrivener, A Story of Wall Street, Putnam's
    Magazine (1856) ..........................................................3

Scalia & Garner, Reading Law, The Interpretation of Legal Texts,
    Section 28 C ..............................................................12

U.S. Const. amend. VI ..................................................3, 7, 19

## STATEMENT OF ISSUES PRESENTED

1.  Whether 18 U.S.C. § 371 (the "Klein Conspiracy Doctrine") is still viable when used to prosecute the obstruction of the administration of the tax laws:

    a.  Given recent Supreme Court jurisprudence relating to the use of general criminal statutes, is the Klein Conspiracy Doctrine overly broad and violates the Rule of Lenity;

    b.  Given the passage by Congress of 26 U.S.C. § 7212 and 26 U.S.C. § 7214, does the existence of a specific statutory scheme designed to deal with the instant conduct preclude the application of the Klein Conspiracy Doctrine;

    c.  Whether evidence introduced by the Government, that the alleged conspiracy began decades before the conduct alleged in the indictment took place, constitutes reversible error because it is an unlawful constructive amendment to the indictments; and

    d.  Whether the court below properly permitted the Government to introduce a statement by an alleged co-conspirator under the hearsay exception to the Federal Rules of Evidence, FRE § 801.

## STATEMENT OF THE CASE

Joel Lingat was charged by three (3) indictments, including an indictment filed September 15 ,2021 (A-29-A-32), the first superseding indictment filed on October 20, 2021 (A-33-38) and the second superseding indictment filed on August 26, 2022 (A-39-A-43) with co-defendant, Joseph Eugene Lemay, in the Southern District of New York pursuant to 18 U.S.C. § 371, for conspiracy to defraud the Internal Revenue Service.

After motion practice, and the unrelated tax charge against Mr. Lemay was severed and transferred to the District Court of New Jersey, neither the initial indictment nor either of the superseding indictments charged Mr. Lingat with a substantive tax crime. (A-29-A-43).

The conduct which forms the subject matter of the proceedings below, relates to Mr. Lingat's employment as an accountant/bookkeeper with Moishe's Moving Systems, Inc. ("MM"). Mr. Lingat was charged with keeping the books and records for a number of moving companies, which the Government claimed were "sham" corporations that performed moves for MM.

Although the Government portrayed Mr. Lingat as a major player in the alleged conspiracy, the evidence at trial was to the contrary. Mr. Lingat's duties were administrative and clerical. He did not have authority to sign checks, withdraw money or the ability to stamp checks. (A-401); (A-502); (A-633); (A-667-A-670). All invoices

paid by the labor companies required the approval of upper management. (A-399-401); (A-424-A-425). The foremen of the labor companies, not Joel Lingat, paid the workers, and Lingat had no power to use any funds remaining after expenses. (A-397-A-398); (A-401). Nissim Fadida, the President of MM, and a cooperating witness, admitted that had he not stamped checks and cooperated with the labor company system he would have been fired. (A-670).

To be sure, Mr. Lingat, a Filipino Immigrant with limited employment prospects, could have followed the example of Bartelby, the Scrivener.[1] Lingat could have refused to follow the directions of his superiors. However, unlike Bartelby, who died by his own hand, Joel Lingat elected to do what he was told, since he undoubtedly would have lost his job had he followed Bartelby's example.

During the course of the trial, the Government introduced a statement, over objection, made by an alleged co-conspirator, Yaron Hister, who was not present at the trial and was unavailable, stating that Joel Lingat received certain funds under the alias, "Norman Hines." This statement was deemed admissible, over objection, even though it was hearsay and clearly testimonial in violation of the confrontation clause of the United States Constitution. U.S. Const. amend. VI.

Furthermore, during the course of the trial, a witness, Eddie Soonica, one of

---

[1] *see* Melville, Bartelby the Scrivener, A Story of Wall Street, Putnam's Magazine (1856).

MM's managers, was permitted to testify that the alleged conspiracy dated back to the 1980s, even though the various indictments only dated back to 2010. (A-109-A-182).

The court below specifically instructed the jury that the Government did not have to prove an underlying tax loss or tax offense:

> *At the same time, it is not necessary that the government or the IRS suffered a financial loss from the scheme. Nor is it necessary for you to find that in any particular instance the conspirator's conduct was actually examined by the IRS. A conspiracy to defraud exists simply when there is an agreement, if you so find, to impede, impair, obstruct or defeat, by fraud or dishonest means, a lawful function of the IRS. Indeed, even if the taxpayer's ultimate legal position on some issue is correct and he and/or the tax paying entity owes no additional taxes, that is not a defense to the crime charged. One cannot use deception and dishonest means, such as making false statements to the IRS, to impede, impair, obstruct or defeat the IRS even to protect a legitimate tax position*

(A-924); (A-979-A-1008).

On April 15, 2024, the jury found Joel Lingat guilty of conspiracy to defraud the Internal Revenue Service. (A-978).

On August 21, 2024, Judge Mary Kay Vyskocil entered a sentence in the amount of two (2) years against Mr. Lingat and imposed a fine of $20,000. (SPA-1-SPA-7).

On August 28, 2024, Mr. Lingat filed a Notice of Appeal. (A-1019-A-1020).

On October 9, 2024, Mr. Lingat filed a motion seeking to extend his bail and to

stay the fine of $20,000. (A-1021-A-1036).

On October 17, 2024, Judge Mary Kay Vyskocil denied Mr. Lingat's motion seeking to extend his bail but granted the stay of the $20,000 fine. (A-1037).

On November 4, 2024, Mr. Lingat made a motion in the Second Circuit seeking to extend his bail pending appeal. (Second Circuit ECF Doc. No. 18).

On November 20, 2024, the Second Circuit denied Mr. Lingat's motion to extend his bail pending appeal. (Second Circuit ECF Doc. No. 26 and No. 27).

On November 22, 2024, Mr. Lingat surrendered at Lewisburg Satellite Campus.

## JURISDICTIONAL STATEMENT

The district court, the Southern District of New York, had jurisdiction under 18 U.S.C. § 3231. The judgment of defendant-appellant Joel Lingat was filed and entered on August 21, 2024, in the Southern District of New York. (SPA-1-SPA-7). On August 28, 2024, Joel Lingat filed a timely notice of appeal with the Second Circuit Court of Appeals. (A-1019-A-1020). This Court has jurisdiction under 28 U.S.C. § 1291.

## SUMMARY OF ARGUMENT

The primary question addressed by Mr. Lingat's appeal cuts right to the core of the federal general conspiracy statute, 18 U.S.C. § 371 (the "Klein Conspiracy Doctrine"). As is more fully set forth herein, Mr. Lingat maintains that the Klein Conspiracy Doctrine should be overruled to the extent that this doctrine has been utilized to prosecute cases where the alleged criminal conduct constitutes obstruction of the administration of the Internal Revenue Code. The Klein Conspiracy Doctrine

5

has been severely criticized by legal commentary. *See* Abraham S. Goldstein, *Conspiracy to Defraud the United States*, 68 Yale L.J. 405 (1959); John A. Townsend, *Tax Obstruction: Is Making the IRS's Job Harder Enough?*, 9 Hous. Bus. & Tax L.J. 255 (2009); Jermey H. Temkin, *Is the 'Klein' Conspiracy Doomed?,* NYLJ, November 23, 2023; Seth C. Farber & Jeffery J. Amato, *Klein Conspiracies in the Wake of US v. Coplan,* Law 360 New York, March 4, 2017. Furthermore, the Second Circuit itself questioned the legal foundation for the doctrine and only accepted its continued validity because of the doctrine of stare decisis. United States v. Coplan, 703 F.3d 46 (2d Cir. 2012). In fact, this Court recognized that since 18 U.S.C. § 371 does not have textual support for the Klein Conspiracy Doctrine, prosecutions such as the one at bar are grounded in common law crimes which raise serious, and in our view fatal, constitutional questions. Id; *See* United States v. Lanier, 520 U.S. 259, 267 n. 6, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) ("Federal crimes are defined by Congress, not the court...."); *see also* Rogers v. Tennessee, 532 U.S. 451, 476, 121 S. Ct. 1693, 149 L.Ed.2d 697 (2001) (Scalia, J., dissenting) ("[T]he notion of a common-law crime is utterly anathema today....").

Simply put, the doctrine of stare decisis can no longer justify the Klein Conspiracy Doctrine's continued viability for two (2) reasons. First, the Supreme Court repeatedly has limited the overly broad interpretation of general criminal statutes; and second, the Government charged Mr. Lingat under a general criminal statute even

though the Internal Revenue Code has a specific statutory scheme designed to deal with the instant alleged criminal conduct—the obstruction of the tax law.

The Government exploited the use of the Klein Conspiracy Doctrine in the instant matter to prejudice Joel Lingat's legal position. Specifically, the Government introduced evidence that the conspiracy began decades earlier than the conduct alleged in the indictments, well before Joel Lingat began working at the company. Furthermore, the court below permitted the Government to introduce prejudicial hearsay evidence against Joel Lingat under the co-conspirator statement exception to the Federal Rules of Evidence. This evidence clearly would have been inadmissible had Mr. Lingat not been charged under 18 U.S.C. § 371. Furthermore, the admission of this evidence violates Joel Lingat's rights under the Confrontation Clause of the United States Constitution. U.S. Const. amend. VI.

## LEGAL ARGUMENT

### WHETHER THE KLEIN CONSPIRACY DOCTRINE IS STILL VIABLE WHEN USED TO PROSECUTE THE OBSTRUCTION OF THE ADMINISTRATION OF THE TAX LAWS

#### i. The Supreme Court Limits The Overly Broad Interpretation Of General Criminal Statutes

18 U.S.C. § 371, the conspiracy statue, originally required the theft of money or property from the United States. United States v. Klein, 247 F.2d 908 (2d Cir. 1957), relying upon two (2) early 20th century Supreme Court decisions, which expanded 18 U.S.C. § 371, determined that a viable prosecution existed where the

Government could show that the defendant impeded the administration of the tax laws, even where the Government could not prove that any substantive tax crime had been committed, or even where the defendant's tax position ultimately proved to be correct. When first interpreting Section 371, the Supreme Court highlighted the centrality of attempts to cheat the United States of money and/or property interests under the Court's understanding of the term "defraud." United States v. Hirsch, 100 U.S. 33, 35 (1879) ("The fraud mentioned is any fraud against them. It may be against the coin or consist in cheating the government of its land or other property."). Thirty (30) years later, in Haas v. Henkel, 216 U.S. 462 (1910), the Supreme Court characterized the "defraud" clause more expansively in dicta. Later on, the Supreme Court, once again, paid lip-service in dicta to the expansive reading of the conspiracy statute. Hammerschmidt v. United States, 265 U.S. 182 (1924). The expansive reading of the conspiracy statute, reflected in both Haas and Hammerschmidt, albeit only dicta, reached its outer-most limits in United States v. Klein, 247 F.2d 908 (2d Cir. 1957).

By 2012, Supreme Court jurisprudence had already begun its steady march designed to limit the reach of overly broad and vaguely written general criminal statutes to the limited criminal conduct these statutes were designed to prevent. In United States v. Coplan, 703 F.3d 46 (2d Cir. 2012), the Second Circuit recognized that its jurisprudence was moving in that direction but declined to overrule the Klein

8

Conspiracy Doctrine solely on the grounds of stare decisis.

In Coplan, this Court found that the decision in Skilling v. United States, 561 U.S. 358 (2010) did not provide sufficient guidance to justify the rejection of the Klein Conspiracy Doctrine. Id. However, Supreme Court decisions since Coplan have continued to limit general statutes to their original purpose instead of allowing imaginative prosecutors to cast their wide nets at the general population. See McDonnell v. United States, 136 S. Ct. 2355 (2016); Cleveland v. United States, 531 U.S. 12 (2000); Kelly v. United States, 140 S. Ct. 1565 (2020); Percoco v. United States, 598 U.S. 319, 323 (2023); Ciminelli v. United States, 598 U.S. 306, 309-10 (2023).

Two (2) freshly minted Supreme Court cases provide additional compelling support for the proposition that 18 U.S.C. § 371 should only be applied to cover conspiracies to deprive the United States of money or property, rather than mere obstruction of the administration of the Internal Revenue Code. Fischer v. United States, No. 23-5572, 603 U.S. __ (2024); Trump v. United States, No. 23-929, 603 U.S. __ (2024). The Fischer case is particularly instructive since it forbade the Government from utilizing an obstruction of justice statute designed specifically for books and records crimes as a general obstruction statute designed to cover the entire area of federal criminal law. In Trump v. United States, supra, the Court obliquely criticized the Justice Department's views of the very statute at issue here—18 U.S.C.

§ 371—as a catch-all statute to ensnare former presidents in a spider web of injustice.

Not surprisingly, lower courts, recognizing the developing jurisprudence, which is the hallmark of Supreme Court practice, have necessarily used a predictive approach to future Supreme Court decisions when departing from precedent the courts find to be clearly wrong. *See e.g*. In re Arway, 22 B.R. 216 (W.D.N.Y. 1998); Finkel v. Stratten Corp., 962 F.2d. 169 (1992). Just such an approach is required here.

We recognize that the doctrine of stare decisis, when applied horizontally, vertically or Circuit-wide has an important role in Second Circuit jurisprudence. However, this doctrine has its limits, especially given the limitations recently placed on this doctrine by the United States Supreme Court.

The Second Circuit has recognized the limits of the doctrine of stare decisis, especially in matters of statutory construction. In Shi Liang Lin v. U.S. Dept. of Justice, 494 F.3d. 296 (2d. Cir 2007), page 310, this Court found:

> *"While stare decisis is undoubtedly of considerable importance of statutory interpretation, the Supreme Court 'has never applied stare decisis mechanically to prohibit overruling...earlier decisions determining the meaning of statutes.'* Monell v. Dep't of Social Servs., *436 U.S. 658, 695, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). We should not do so either. The fact that we have failed to follow the plain language of a law of Congress for ten (10) years does not require that we do so indefinitely. That would "place on the shoulders of Congress the burden of the Court's own error."* Girouard v. United States, *328 U.S. 61, 70, 66 S.Ct. 826, 90 L.Ed. 1084 (1946).*

The Supreme Court has made crystal clear that the stare decisis rule should not

10

be a barrier where prior precedent is found by subsequent courts to be wrongly decided. Loper Bright Enters. v. Raimondo, 144 S. Ct. 2244 (2024). As Justice Gorsuch teaches us in his concurring opinion in Loper Bright Enters, supra:

> *From the start, too, American courts recognized that not everything found in a prior decision was entitled to equal weight. As Chief Justice Marshall warned, "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used."* Cohens v. Virginia, *6 Wheat. 264, 399, 5 L.Ed. 257 (1821). To the extent a past court offered views "beyond the case," those expressions "may be respected" in a later case "but ought not to control the judgment."*

The case at bar is particularly appropriate for a reexamination of this Court's holdings in Klein and Coplan. Joel Lingat was not charged with any substantive tax crime, in contrast to the defendants in both Klein and Coplan. In other words, the Government elected to charge Mr. Lingat with obstruction of the tax laws, even though the Government made no attempt to prove that a single substantive tax offense was committed by Mr. Lingat, or for that matter anyone else. The Government's use of 18 U.S.C. § 371 and its expansive interpretation of that statute should be rejected outright by this Court. Joel Lingat's conviction should be summarily reversed on this ground.

> ii. **The Government charged Mr. Lingat under a general criminal statute even though the Internal Revenue Code has a specific statutory scheme designed to deal with Joel Lingat's alleged criminal conduct**

It is a basic principle of statutory construction that the creation of a specific

statute shows a legislative intent that persons who perform the type of acts to which it is directed should be punished under the specific statute or not at all. This rule of statutory construction has been applied both in criminal as well as civil proceedings, both under federal law, as well as in state civil and criminal litigation. The "general/specific statutory construction has been recognized by the United States Supreme Court, see United States v. Estate of Romani, 520 3U. S. 517; the Second Circuit, in Nutritional Health Alliance v. Food and Drug Administration, 318 F.3d 92; the New York Court of Appeals in People v. Valenza, 60 N. Y. 2nd 363; as well as in the majority of states which have ruled on this issue of statutory construction. *See e.g.* State V. Shriner, 101 Wash. 2d 576, 680 1P. 2nd 237; Scalia & Garner, Reading Law, The Interpretation of Legal Texts, Section 28 C (Recognizing that the general/specific cannon of instruction applies where a specific statute is passed after the general more ambiguous statute was enacted).

This doctrine has particular application to the Lingat case. Joel Lingat's prosecution accused him of violating 18 U.S.C. §371 – conspiracy to defraud the United States. In Jeremy Temkin's November 2023 New York Law Journal article prophesying the end of the Klein Conspiracy Doctrine, he points out that when this ancient statute was passed in the 19th century, the term defraud was defined as taking property or money from United States Government. Two (2) United States Supreme Court cases, decided in the early 20th century, suggested in dicta that the fraud language

12

could be extended to include the obstruction of the administration of United States law. The Klein Conspiracy Doctrine, based upon an erroneously decided and ancient Second Circuit case, relies entirely upon these dicta in concluding that the general conspiracy statute could be used to prosecute obstruction of the administration of the Internal Revenue Code, even where no substantive tax offense could be proven or even alleged.

In the court below, Mr. Lingat's principal argument was that 18 U.S.C. § 371 should not apply to his case since obstruction of the administration of the Internal Revenue Code did not constitute fraud as it was originally defined in the 19th century when that statute was promulgated by the Congress. We also pointed out that Congress did pass 26 U.S.C. § 7212 which specifically criminalizes the obstruction of the administration of the Internal Revenue Code. Furthermore, 26 U.S.C. § 7214 criminalizes defrauding the United States but only applies to employees of the Internal Revenue Service.

Notably, in the seminal case U.S. v. Klein, supra, the charged criminal activity therein occurred when the 1939 Internal Revenue Code was in place. Interestingly, the court in U.S. v. Klein had no reason to consider whether the Internal Revenue Code in place when the criminal activity occurred dealt with the conduct being prosecuted in that case. As we explain, infra at pages 14 and 15, the 1939 Internal Revenue Code was different from the Code as it now exists. Congress enacted the Internal Revenue

Code of 1954, amended again in 1986, which specifically included the new section of

26 U.S.C. § 7212.

Therefore, almost 100 years after passing 18 U.S.C. § 371, by passing 26 U.S.C.

§ 7212, the United States Congress created a specific statutory scheme designed to

punish the obstruction of the administration of the tax laws. 26 U.S.C. § 7212 provides

as follows, in relevant part:

> *a) Corrupt or forcible interference:*
> Whoever corruptly *or by force or threats of*
> *force (including any threatening letter or communication)*
> *endeavors to intimidate or impede any officer or employee*
> *of the United States acting in an official capacity under*
> *this title,* or in any other way corruptly *or by force*
> *or threats of force (including any threatening letter or*
> *communication)* obstructs or impedes, or endeavors to
> obstruct or impede, the due administration of this title,
> shall, *upon conviction thereof, be fined not more than*
> *$5,000, or imprisoned not more than 3 years, or both,*
> *except that if the offense is committed only by threats of*
> *force, the person convicted thereof shall be fined not more*
> *than $3,000, or imprisoned not more than 1 year, or both.*
> *The term "threats of force", as used in this subsection,*
> *means threats of bodily harm to the officer or employee of*
> *the United States or to a member of his family.* Emphasis
> supplied.

The passage of the 26 U.S.C § 7212(a), including the omnibus language

encompassing the criminalization of corruptly obstructing or impeding the

administration of the Internal Revenue Code was no accident. This section of the code

was not present in its current form in the Internal Revenue Code of 1939. The Internal

Revenue Code of 1939 instead only forbade taxpayers from forcibly interfering with

14

the duties of Treasury agents. *See* 26 U.S.C. § 3601(1939). We submit by adding the omnibus clause to 26 U.S.C. § 7212, Congress quite intentionally designated the criminal conduct it intended to punish. This statute precisely describes that conduct and how it should be dealt with under federal criminal law.

In fact, the Supreme Court recently provided additional guidance on the reach of the omnibus clause of this obstruction statute, limiting it to situations where a proceeding was either ongoing or at least foreseeable. Marinello v. United States, 138 S. Ct. 1101 (2018). Obviously, after 2018, the congressional intent defining the limits of conduct deemed to criminally violate the tax laws through the obstruction of the administration of the tax laws provides clear and convincing precedent supporting Lingat's position that he should not have been charged under 18 U.S.C. § 371.[2] Congress, not the Courts and certainly not the Justice Department, decides what should be deemed criminal and what is not. Congress does this by enacting criminal statutes. Common law crimes, concocted many decades ago by judges long gone, applying erroneous attempts at statutory construction, require immediate judicial correction. Mr. Lingat's conviction provides this Court with the perfect opportunity to reject the Klein Conspiracy Doctrine.

_____

[2] The Government's anticipated position is not advanced by the Second Circuit's decision in United States v. Atilla, 966 F.3d 118 (2d Cir. 2020). In fact, this Court in Atilla recognized that 26 U.S.C. § 7212 specifically applies to obstruction the Internal Revenue Code, precisely the point being made herein.

### iii. Whether evidence introduced by the Government, that the conspiracy began decades before the conduct alleged in the indictment took place, constitutes reversible error

The lower court allowed the Government to introduce evidence that the conspiracy set forth in the indictment began, not in or about 2010 as set forth in the superseding indictments, but rather in the late 1980s, which constituted a constitutionally defective constructive amendment of the indictment. The remoteness in time distinguished the case at bar from United States v. Hermann, 705 F.2d. 662 (2d.Cir.1982) where the variance between the time stated in the indictment and the proof at trial was a matter of months, and hence de minimus.

Here, the Government introduced evidence to add at least two (2) decades between the proposed scheme and the facts alleged in the indictment, which constitutes a fatal constructive amendment of the indictment and should not be permitted. United States v. Sakos, 115 F. Supp 3d. 475(D. Conn 2015); United States v. Johnson, 56 F.3d. 347(2d. Cir. 1995).

Furthermore, the alleged uncharged criminal acts occurred remotely in time and have nothing to do with Mr. Lingat. This evidence was highly prejudicial to Mr. Lingat, and outweighs any minimal relevance this evidence has, and would confuse the jury. United States v. Varoudakis, 233 F.3d. 113(1st Cir. 2000), United States v. Juarez, 866 F.2d. 622 (5th Cir 2017).

iv. **Whether the court below properly permitted the Government to introduce a statement by an alleged co-conspirator under the hearsay exception to the Federal Rules of Evidence**

The lower court admitted certain out-of-court statements by people they claimed were co-conspirators under Rule 801(d)(2)(E) of the Federal Rules of Evidence. The statement by Nissim Fadida concerning an alleged conversation that took place between him and outside accountant, Yaron Hister, concerning the identity of a Norman Hines should not have been admitted. This is because the statement is hearsay and does not qualify as statement by co-conspirator because Hister's statements to Fadida were not statements by a co-conspirator in furtherance of a tax evasion scheme because Mr. Hister was never proven to be a "co-conspirator." However, even if the lower court did determine that Mr. Hister was a co-conspirator, his statements to Mr. Fadida concerning Norman Hines were not in furtherance of the alleged conspiracy and therefore, were still inadmissible.

Rule 801(d)(2)(E) provides that "[a] statement is not hearsay if…the statement is offered against an opposing party and was made by that party's coconspirator during and in furtherance of the conspiracy." United States v. Adelekan, 567 F.Supp.3d 459 (S.D.N.Y. 2021). In order for the statement to be admitted, the Government needed to establish, by a preponderance of evidence, that: (i) there was a conspiracy; (ii) both Mr. Hister and Mr. Fadida were co-conspirators; and (iii) the statement being offered into evidence is in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999). A statement

is made in furtherance of a conspiracy if it is "designed to promote or facilitate achievement of the goals of that conspiracy." <u>Glenn v. Bartlett</u>, 98 F.3d 721, 728 (2d Cir. 1996).

While the court may consider the statement to "determine the existence of a conspiracy… 'there must be some independent corroborating evidence of the defendant's participation in the conspiracy.'" <u>Id.</u>; <u>United States v. Padilla</u>, 203 F.3d 156, 161 (2d Cir. 2000) (quoting <u>United States v. Tellier</u>, 83 F.3d 578, 580 (2d Cir. 1996). Notably, these statements must be those that "prompt the listener—who need not be a co-conspirator—to respond in a way that promotes or facilitates the carrying out of a criminal activity." <u>United States. v. Moldonado-Rivera</u>, 922 F.2d 934 (2d Cir. 1990); <u>United States v. Beech-Nut Nutrition Corp.</u>, 871 F.2d 1181(2d Cir. 1989). However, such statements "need not be commands, but are admissible if they provide reassurance, or seek to induce the coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." <u>United States v. Desena</u>, 260 F.3d 150 (2d Cir. 2001). Additionally, "mere idle chatter, narrative statements of past events, and superfluous casual conversations are not statements in furtherance of conspiracy." <u>United States v. Santos</u>, 20 F.3d 280 (7th Cir. 1994); <em>see</em> United States v. Paone, 782 F.2d 286, 390 (2d Cir. 1986); see <u>United States v. Desena</u>, 260 F.3d 150; <em>see also</em> <u>United States v. Esparra</u>, 2014 WL 1569607 (S.D.N.Y. 2014).

Here, Yaron Hister was not proven to be a co-conspirator. In fact, at trial, various witnesses testified that Yaron Hister was brought in to clean up the problems at Moishe's Moving. For example, Rami Haim testified that Hister was "an outside consultant to Moishe, brought in to overview the entire Mana companies." (A-287). He testified that that he was apprehensive about providing Hister with any information regarding the labor companies because they were doing "something illegal." (A-288). Haim further testified that Hister came in to "organize" the companies and that "if a company was in good shape [they] continued working with it but the bad ones were killed and opened new ones" and forced them to open new companies that were legitimate. (A-290). This begged the question- if Hister were actually a co-conspirator, why would Haim be hesitant to cooperate with him?

"The Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses to court." U.S. v. Jackson, 636 F.3d 687 (5th Cir. 2011) (testimonial evidence violates the Confrontation Clause). In the case of U.S v. Garcia, the court found that the out of court statement "I've been told they are small" when offered for the truth violated the Confrontation Clause. U.S. v. Garcia, 793 F.3d 1194, 97 Fed. R. Evid. Serv. 1527 (10th Cir. 2015). Here, the statements by Hister to Fadida concerning the identity of Norman Hines were accusatory and testimonial in nature and are clearly in violation of the Joel Lingat's rights under the Confrontation Clause of the United States Constitution.

19

Lastly, this statement was not in furtherance of the conspiracy. In fact, Hister's mission was to investigate and correct the various issues with the labor companies. Indeed, Hister was terminated because the company did not wish to implement his recommendations. (A-686-A-688). In fact, this evidence should not have been admitted because the statement does nothing to prompt anyone to do anything in furtherance of the conspiracy and is simply idle chatter and/or a narrative of past events.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse Joel Lingat's conviction under <u>18 U.S.C. § 371</u> and grant any such other and further relief as this Court deems just and proper.

Dated: December 6, 2024  
      New York, New York

Respectfully submitted,

*/s/ James J. Mahon*  
James J. Mahon  
Samantha A. Lesser  
45 Broadway, 17th Floor  
New York, New York 10006  
Telephone: (212) 599-3322  
JMahon@beckerlawyers.com  
SaLesser@beckerlawyers.com  
*Attorneys for Defendant-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, James J. Mahon, hereby certify, pursuant to the Federal Rules of Appellate Procedure 32(a)(7)(C), that the foregoing Brief for Defendant-Appellant Joel Lingat is proportionately spaced, has a typeface of 14-point font, contains 4,846 words excluding those parts of the Brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

Dated: December 6, 2024

*/s/ James J. Mahon*
James J. Mahon

# SPECIAL APPENDIX

i

## TABLE OF CONTENTS

**Page**

Judgment in a Criminal Case, dated August 19,
2024 ........................................................................ SPA-917

AO 245B (Rev. 09/19)    Judgment in a Criminal Case    (form modified within District on Sept. 30, 2019)
Sheet 1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___8/21/2024___

# UNITED STATES DISTRICT COURT

### Southern District of New York

UNITED STATES OF AMERICA

v.

Joel Lingat

)
)
)
)
)
)
)
)
)

## JUDGMENT IN A CRIMINAL CASE

Case Number: S2 21 CR 573- 001 (MKV)

USM Number: 50404-509

James John Mahon; Glenn Harlan Spiegel
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)    One, the sole count, of the S2 Indictment
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 371 | CONSPIRACY TO DEFRAUD THE IRS | 6/15/2021 | 1 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)   Any Open Counts   ☐ is   ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

8/19/2024
Date of Imposition of Judgment

*Mary Kay Vyskocil*
Signature of Judge

Mary Kay Vyskocil United States Dictrict Judge
Name and Title of Judge

8/19/2024
Date

SPA-2

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __7__

DEFENDANT:    Joel Lingat
CASE NUMBER:    S2 21 CR 573- 001 (MKV)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

24 months

☑ The court makes the following recommendations to the Bureau of Prisons:

   The Court recommends the defendant be housed in a facility in upstate NY or Pennsylvania.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ ☐ a.m. ☐ p.m.    on _____ .

   ☐ as notified by the United States Marshal.

☑ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☑ before 2 p.m. on    11/22/2024 _____ .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

SPA-3

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page    3    of    7

DEFENDANT:  Joel Lingat
CASE NUMBER:  S2 21 CR 573- 001 (MKV)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

2 years

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

SPA-4

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | | | Judgment—Page | 4 | of | 7 |

DEFENDANT:  Joel Lingat
CASE NUMBER:  S2 21 CR 573- 001 (MKV)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

SPA-5

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page    5    of    7

DEFENDANT:  Joel Lingat
CASE NUMBER:  S2 21 CR 573- 001 (MKV)

## SPECIAL CONDITIONS OF SUPERVISION

You must provide the probation officer with access to any requested financial information.

You must not incur new credit charges or open additional lines of credit without the approval of the probation officer unless you are in compliance with the installment payment schedule.

If the probation officer determines, based on your criminal record, personal history or characteristics, that you pose a risk to another person (including an organization), the probation officer, with the prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

It is recommended that you be supervised by the district of residence.

SPA-6

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 5 — Criminal Monetary Penalties

Judgment — Page __6__ of __7__

DEFENDANT: Joel Lingat
CASE NUMBER: S2 21 CR 573- 001 (MKV)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment**** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 20,000.00 | $ | $ |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| | | | | | |
|---|---|---|---|---|---|
| **TOTALS** | $ | 0.00 | $ | | 0.00 |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐  the interest requirement is waived for the   ☐ fine   ☐ restitution.

   ☐  the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

SPA-7

AO 245B (Rev. 09/19)    Case 1:21-cr-00573-MKV    Document 202    Filed 08/21/24    Page 7 of 7
Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:  Joel Lingat
CASE NUMBER:  S2 21 CR 573- 001 (MKV)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ __100.00__  due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
    term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☑  Special instructions regarding the payment of criminal monetary penalties:
    Fine: Payment in equal monthly installments in an amount to be determined by the Bureau of Prisons, to
    commence 30 days after the date of this judgment.

    Upon release from prison, Defendant shall commence payments in equal monthly installments of $500,
    payable on the 1st of each month.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.